No. 22-14161-A

In the

# United States Court of Appeals
# for the Eleventh Circuit

ZURY BRITO-ARROYO,

*Appellant,*

vs.

UNITED STATES OF AMERICA,

*Appellee.*

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
CASE NUMBER: 1:22-CV-01934-TWT

## BRIEF OF APPELLANT

E. Travis Ramey
Appellate Clinic
University of Alabama School of Law
Box 870382
101 Paul W. Bryant Drive, East
Tuscaloosa, Alabama 35487
(205) 348-4960
tramey@law.ua.edu

*Counsel for Appellant Zury Brito-Arroyo*

# In the
# United States Court of Appeals
# for the Eleventh Circuit

ZURY BRITO-ARROYO,

*Appellant,*

vs.

UNITED STATES OF AMERICA,

*Appellee.*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Counsel of record for Appellant Zury Brito-Arroyo certifies that these persons have an interest in the outcome of this appeal. Counsel makes these representations for the Judges of this Court to evaluate possible disqualification or recusal.

Alterman, Cathy M., Esq.

Arroyo-Garcia, Roberto

Batten, Hon. Timothy C. Batten, Jr.

Baverman, Hon. Alan. J.

Bradford, Garrett L., Esq.

Brito-Arroyo, Zury

Brito-Maldonado, Bonifacio

Buchanan, Hon. Ryan K – United States Attorney

Christian, Ryan M., Esq

Cognac, Paul M., Esq.

Dodge, Whitman Matthew, Esq.

Fleming, Judy A.

Friedman, Michael Robert, Esq.

Garrett, Bradford L., Esq.

Haynes, Susan Rose, Esq.

Horn, John A., Esq.

Jeffrey, Mark R., Esq.

Kearns, Stephanie A., Esq.

Lovell, John R. Esq.

McBath, J. Elizabeth, Esq.

Pak, Hon. Byung J. – Former United States Attorney

Palmer, Hon. Emory

Ramey, E. Travis, Esq.

Sommerfeld, Lawrence R., Esq.

Thrash, Hon. Thomas W., Jr.

United States of America

University of Alabama School of Law—Appellate Advocacy Clinic

Vineyard, Hon. Russell G.

Walker, Hon. Linda T.

I certify that no publicly traded company or corporation has any interest in the outcome of this case or this appeal.

/s/ E. Travis Ramey
E. Travis Ramey

Attorney for Appellant
Zury Brito-Arroyo

**OF COUNSEL:**
Appellate Advocacy Clinic
University of Alabama School of Law
Box 870382
101 Paul W. Bryant Drive, East
Tuscaloosa, Alabama 35487
(205) 348-4960
tramey@law.ua.edu

## ORAL ARGUMENT STATEMENT

This case warrants oral argument, and Appellant Zury Brito-Arroyo requests it. The complex and intertwined nature of the facts and proceedings of this case make oral argument likely to assist the Court's decisional process. *See* Fed. R. App. P. 34(a)(2); 11th Cir. R. 34-3(b).

Further, the Appellate Advocacy Clinic that represents Brito has a dual mission: to represent clients and educate law students. If the Court finds it a relevant factor, oral argument would present a significant opportunity to further the Clinic's pedagogical mission.

# TABLE OF CONTENTS

ORAL ARGUMENT STATEMENT ....................................................................i

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES .......................................................................... iii

I.   STATEMENT OF JURISDICTION ...........................................................1

II.  STATEMENT OF THE ISSUES ................................................................2

III. STATEMENT OF THE CASE ...................................................................3

   A.   Nature of the case ......................................................................3

   B.   Statement of the Facts ................................................................4

   C.   Procedural History ....................................................................5

   D.   Standards of Review..................................................................11

IV.  SUMMARY OF THE ARGUMENT ..........................................................12

V.   ARGUMENT........................................................................................14

   A.   Lovell's representation fell below an objective standard of
      reasonableness. ........................................................................15

   B.   Lovell's ineffective assistance prejudiced Brito. .........................19

   C.   At minimum, Brito was entitled to an evidentiary hearing........24

VI.  CONCLUSION.....................................................................................28

CERTIFICATE OF COMPLIANCE..............................................................29

CERTIFICATE OF SERVICE ......................................................................30

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Hill v. Lockhart,*
474 U.S. 52 (1985) ............................................................ 15

*\*Lafler v. Cooper,*
566 U.S. 156 (2012) ..................................................... 21, 28

*McMann v. Richardson,*
397 U.S. 759 (1970) ......................................................... 14

*\*Missouri v. Frye,*
566 U.S. 134 (2012) ........................................ 15, 19, 20, 21

*Padilla v. Kentucky,*
559 U.S. 356 (2010) .................................................. 14, 15

*\*Strickland v. Washington,*
466 U.S. 668 (1984) ................................................. *passim*


**Eleventh Circuit**

*Bonner v. City of Prichard,*
661 F.2d 120 (11th Cir. 1981) (en banc) ......................... 18

*Chandler v. United States,*
218 F.3d 1305 (11th Cir. 2000) ...................................... 15

*Conner v. Hall,*
645 F.3d 1277 (11th Cir. 2011) ...................................... 11

*Diaz v. United States,*
930 F.2d 832 (11th Cir. 1991) ........................................ 25

*Martin v. United States,*
703 F. App'x 866 (11th Cir. 2017) ................................... 25

*Mincey v. Head,*
    206 F.3d 1106 (11th Cir. 2015) ....................................................... 11

*Mostowicz v. United States,*
    625 F. App'x 489 (11th Cir. 2000) .................................................. 17

*\*Osley v. United States,*
    751 F.3d 1214 (11th Cir. 2014) ....................................................... 21

*Patel v. United States,*
    252 F. App'x 970 (11th Cir. 2007) .................................................. 11

*Reynolds v. Chapman,*
    253 F.3d 1337 (11th Cir. 2001) ....................................................... 11

*United States v. Brito-Arroyo*
    No. 20-10974, 2021 WL 3661200
    (11th Cir. Aug. 18, 2021) ............................................................ 9, 16

*\*United States v. Simms,*
    385 F.3d 1347 (11th Cir. 2004) ............................................... *passim*

**Other Circuits**

*\*Cooks v. United States,*
    461 F.2d 530 (5th Cir. 1972) .......................................................... 18

*\*Nelson v. Estelle,*
    642 F.2d 903 (5th Cir. 1981) .......................................................... 18

## United States District Courts

*Rivera-Benito v. United States,*
    4:10-cv-19, 2013 WL 10739075
    (N.D. Ga. Sept. 11, 2013) ........................................................ 23, 24

*Vazquez v. United States,*
    No. 1:11-CR-0264-AT-JFK-9, 2015 WL 3407624
    (N.D. Ga. May 27, 2015) ................................................................ 23

## Supreme Court of Georgia

*Granese v. State,*
    206 S.E.2d 26 (Ga. 1974) ............................................................... 4

*Luangkhot v. State,*
    736 S.E.2d 397 (Ga. 2013) ........................................................... 15

## Constitutional Provisions

U.S. Const. amend. VI ....................................................................... 14

## United States Statutes

18 U.S.C. § 2 .......................................................................................... 5

21 U.S.C. § 841(a)(1) ............................................................................ 5

21 U.S.C. § 841(b)(1)(A) ....................................................................... 5

21 U.S.C. § 846 ...................................................................................... 5

21 U.S.C. § 856(b) ................................................................................. 5

21 U.S.C. § 860 ...................................................................................... 5

21 U.S.C. § 860(a) ................................................................................. 5

28 U.S.C. § 1291 ................................................................... 1

28 U.S.C. § 2253(c) .............................................................. 1

28 U.S.C. § 2255 ........................................................... 4, 9, 25

28 U.S.C. § 2255(a) .............................................................. 1

28 U.S.C. § 2255(b) ............................................................ 24

## Rules

Fed. R. App. P. 4(b)(1)(a)(i) ................................................. 1

Fed. R. App. P. 34(a)(2) ....................................................... i

11th Cir. R. 22-1 .................................................................. 1

11th Cir. R. 22-1(b) .............................................................. 1

11th Cir. R. 34-3(b) .............................................................. i

## Other Authorities

*Georgia Judicial Map,* First Judicial District (2015), ............................. 4

United States Courts, U.S. District Courts–Criminal Defendants Disposed of, by Type of Disposition and Offense, During the 12-Month Period Ending September 30, 2022 (Sept. 30, 2022) .................................. 20

United States Courts, U.S. District Courts–Criminal Defendants Disposed of, by Type of Disposition and Offense, During the 12-Month Period Ending September 30, 2023 (Sept. 30, 2023) .................................. 20

# I. STATEMENT OF JURISDICTION

The district court had jurisdiction to hear Appellant Zury Brito-Arroyo's[1] petition because he alleged he was in federal custody in violation of the laws of the United States. *See* 28 U.S.C. § 2255(a). The district court denied Brito's petition and his request for a certificate of appealability. (ECF No. 288.)[2] Brito timely filed a notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i); 11th Cir. R. 22-1; (ECF No. 289).

Because the district court denied his request for a certificate of appealability, Brito requested one from this Court. *See* 11th Cir. R. 22-1(b), (ECF No. 289). The Court granted Brito's request, stating that because reasonable minds would differ on the denial of Brito's motion, his question warrants review. (COA ECF No. 10-1.) Thus, this Court has appellate jurisdiction. *See* 28 U.S.C. §§ 1291, 2253(c).

---

[1] Brito-Arroyo refers to himself as Brito, so this brief will refer to him in that way.

[2] "ECF" refers to the electronic filings in the United States District Court for the Northern District of Georgia. "COA ECF" refers to the electronic filings in this Court.

## II.  STATEMENT OF THE ISSUES

Did the magistrate judge err in concluding, without an evidentiary hearing, that Brito-Arroyo's trial counsel was not deficient for advising him to reject a favorable plea agreement in favor of seeking suppression of the evidence against him and that prejudice did not result?

# III. STATEMENT OF THE CASE

## A. Nature of the case

A criminal defendant's right to counsel is so important that the Founders memorialized it in the Bill of Rights. And that right is not a mere formality. Instead, the right to counsel is a right to effective assistance of counsel.

To be sure, the Sixth Amendment is not a "get out of jail free card" whenever counsel's decisions go awry. Different attorneys may have different approaches and different strategies in their efforts to serve their clients. For this reason, the range of what is "effective" is large, and courts are generally deferential to an attorney's strategic decisions.

But that deference is not absolute, and the range of what is effective has a boundary: objective unreasonableness. Counsel becomes ineffective when its performance is objectively unreasonable.

Brito's counsel crossed the boundary into unreasonableness when he advised Brito to reject a favorable plea agreement based on an argument this Court had foreclosed ten years before. And his counsel's failure to make himself aware of binding precedent caused Brito to reject a plea agreement he otherwise would have accepted. That shoddy representation is not the "assistance" of counsel the Sixth Amendment requires.

Despite the unreasonable representation Brito received and the harm it caused him, the district court denied Brito's request for relief under 28 U.S.C. § 2255, and it did so without an evidentiary hearing. That was error, and this Court should reverse. At minimum, the Court should vacate the judgment and remand for an evidentiary hearing.

## B.    Statement of the Facts

In August 2017, a Department of Homeland Security agent submitted to a Coweta County, Georgia Superior Court judge[3] an affidavit and warrant application for a GPS tracker for Brito's 2002 Jeep Grand Cherokee. (ECF. No. 114-1 at 3.) The affidavit stated the SUV was actively involved in criminal activity in the Coweta County area. (*Id.*) The judge granted the warrant for the tracker, but agents placed the tracker on his SUV in Fulton County, outside of Coweta County's judicial circuit. (*Id.* at 7; ECF No. 124 at 41.)

---

[3] In Georgia, "[t]he territorial jurisdiction of a judge of the superior courts is the judicial circuit in which he presides." *Granese v. State*, 206 S.E.2d 26, 31 (Ga. 1974). Coweta County is part of the Sixth Judicial Circuit, which is composed of Coweta, Griffin, Clayton, Flint, and Towaliga Counties. *Georgia Judicial Map,* First Judicial District (2015), https://firstjudicialdistrict.org/georgia-judicial-map/ (last visited Jan 21, 2024).

Soon after, police observed Brito arrive at 1319 Zachary Way, an address in Gwinnett County, which is also outside Coweta County's judicial circuit. (ECF No. 1 at 4.) Brito left the house in his SUV, and agents began following him. (*Id.*) Agents notified Georgia State Patrol of Brito's location, and when an officer saw Brito commit a traffic violation, he stopped him. (*Id.* at 5.) During the stop, officers found a firearm and a bundle of cash. (*Id.*) Brito is unlawfully present in the United States, so police took him into custody for illegally possessing a firearm. (*Id.*) At 1319 Zachary Way, Brito's mother consented to a police search of the property. (*Id.* at 6.) During this search, police found a methamphetamine lab in a shed on the property. (*Id.*)

## C.    Procedural History

A grand jury indicted Brito of four felonies related to the possession of, and the intent to manufacture and distribute, methamphetamine. (ECF No. 204 at 1); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 856(b), 860, 860(a), 18 U.S.C. § 2.

The district court initially appointed a public defender for Brito. (ECF No. 2.) But Brito obtained private counsel, Michael Friedman, in November, and his public defender withdrew. (ECF Nos. 53, 56.)

Friedman filed two motions to suppress evidence. The first motion focused on suppressing evidence obtained during the roadside search of Brito's SUV. (ECF No. 65.) The second motion focused on suppressing the evidence obtained from the search of 1319 Zachary Way. (ECF No. 77.) After analysis, Friedman requested that he be allowed to withdraw his motions to suppress. (ECF No. 93 at 1.)

Brito then retained John Lovell as counsel, and Friedman withdrew. (ECF Nos. 101, 106.) Lovell moved to reinstate the second motion to suppress. (ECF No. 111 at 2.)

Lovell also filed a third motion to suppress, which centered on the GPS tracker installed on Brito's SUV. (ECF No. 114.) Lovell argued that the Coweta County judge had no jurisdiction to authorize a tracker on a vehicle outside of the Coweta County court's jurisdiction. (*Id.* at 2.) Brito's SUV never entered Coweta County, so Lovell argued the judge lacked jurisdiction to authorize the warrant. (*Id.* at 4.) Lovell also argued law enforcement intentionally made false statements to get permission to track Brito's SUV, so the warrant was void. (*Id.* at 5.)

According to Lovell, at some point between his initial appearance on the case and the hearings on his suppression motions, the attorney for

the Government approached him with an initial plea agreement suggesting a sentence range of ten to fifteen years. (ECF No. 238 at 10, 11.) Based on his view of the probability of success of the pending suppression issues, Lovell advised Brito to reject that plea agreement. And Brito followed Lovell's advice. (*Id.* at 11–12.)

The district court held two hearings on the motions to suppress. (ECF Nos. 124, 125.) The court requested post-hearing briefing, and Lovell again argued the tracker warrant was void *ab initio* due to state-law jurisdictional constraints. (ECF No. 130 at 14.) The Government argued the Fourth Amendment was not controlled by state law, so even if the judge lacked jurisdiction, the warrant satisfied the Fourth Amendment's requirements. (ECF No. 133 at 21.) And the Government argued that like in *United States v. Simms*, 385 F.3d 1347 (11th Cir. 2004), Brito gave voluntary consent to search his SUV. (*Id.* at 28.) In his reply, Lovell addressed *Simms* on the consent issue, but he did not address the central holding of *Simms*—that a violation of state law did not trigger the Fourth Amendment's exclusionary rule. (ECF No. 138 at 8.)

The Report and Recommendation relied on *Simms* to reject Lovell's suppression argument. (ECF No. 141 at 37.) The R&R held that *Simms*

controlled, and it reasoned that *Simms* held that a violation of state law did not equate to a violation of the Fourth Amendment that required suppression of evidence. (*Id.*) Lovell objected to the R&R and attempted to distinguish *Simms* from Brito's case. (ECF No. 154 at 16.) But the district court adopted the R&R. (ECF No. 177.)

After the district court ruled against Brito on the suppression issue, Brito entered into a plea agreement with the Government. (ECF No. 187.) The agreement reserved the right to appeal the district court's ruling on the motion to suppress. (*Id.* at 8.)

At sentencing, Lovell brought up the previous plea offer. (ECF No. 238 at 10.) Lovell stated the Government approved the plea offer, and the offer proposed a sentence of ten to fifteen years. (*Id.* at 11.) Lovell found himself "in a quandry" because he believed the evidence against Brito was inadmissible. (*Id.*) On this belief and his unwillingness to agree the evidence was admissible, Lovell counseled Brito to reject the plea agreement. (*Id.* at 12.) Once the court ruled against Brito, Lovell approached the Government for another plea offer. (*Id.*) The Government offered a plea of "over 24 years," so Lovell advised Brito to reject this plea as well. (*Id.*)

The Government noted there were other plea offers to Brito besides the two Lovell mentioned at sentencing, but Brito entered his plea "less than one month" before his scheduled trial date. (*Id.* at 25.) The Government disputed the first plea agreement was an actual offer: "at most ... this was a tentative offer" that had not yet been approved. (*Id.* at 27.) The court sentenced Brito to 252 months (twenty-one years) in prison. (ECF No. 204 at 3.)

Brito appealed the decision on the suppression issue. (ECF No. 205.) On appeal, this Court held that Brito's case was "just like" the *Simms* case. *United States v. Brito-Arroyo*, No. 20-10974, 2021 WL 3661200, at *3 (11th Cir. Aug. 18, 2021). Because the warrant was reviewed by a neutral magistrate, the warrant was particular, and the warrant had probable cause, the Fourth Amendment's requirements were satisfied. *See id.* at *4. Just like *Simms*, Brito did not point out any constitutional issue. *See id.* So the Court affirmed the district court's decision not to suppress the evidence. *See id.* at *5.

Brito then filed a § 2255 petition. (ECF No. 278.) Brito explained that Lovell's advice was constitutionally deficient because he advised Brito to reject a favorable plea offer of fifteen years "because [Lovell]

*would* win the suppression hearing resulting in no conviction or prison time." (*Id.* at 4 (emphasis added).) On this advice, Brito rejected the plea offer and was later sentenced to twenty-one years as a result. (*Id.*) Elsewhere in his petition, Brito states that he rejected the offer because Lovell advised Brito that "he *could* win the suppression hearing" on the warrant issue. (ECF No. 278-1 at 1 (emphasis added).)

The district court denied Brito's petition. (ECF No. 288.) It held that Brito had failed to show "that Lovell's belief that the suppression issue was potentially meritorious was a position that no reasonable lawyer would have taken" and that "his sentence under the offer's terms would have been less severe than under the judgement and sentence that in fact were imposed." (ECF No. 284 at 8 (quotation marks omitted).) The district court also declined to issue a certificate of appealability. (ECF No. 288.) Brito filed a notice of appeal. (ECF No. 289.) The Court construed that notice as an application for a certificate of appealability and granted the application. (COA ECF No. 10-1.)

## D. Standards of Review

The Court reviews *de novo* a district court's decision to grant or deny a habeas petition. *Conner v. Hall*, 645 F.3d 1277, 1287 (11th Cir. 2011); *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001).

The Court reviews *de novo* a claim of ineffective assistance of counsel because the question is a mixed question of law and fact. *Patel v. United States*, 252 F. App'x 970, 974 (11th Cir. 2007); *Mincey v. Head,* 206 F.3d 1106, 1142 (11th Cir. 2000).

# IV. Summary of the Argument

The district court improperly rejected Brito's ineffective-assistance-of-counsel claim. Brito satisfied the two elements of *Strickland*. One, Lovell's representation fell below an objective standard of reasonableness. And two, the unreasonable representation prejudiced Brito.

1. Lovell's representation was objectively unreasonable because he advised Brito to reject a favorable and reasonable plea agreement based on Lovell's view of the probability of success on a suppression motion. Lovell failed, however, to properly research and locate binding precedent that foreclosed the position he took in that motion. Even when the Government mentioned the binding precedent in its argument on the suppression issue, Lovell apparently overlooked the central holding and continued to make an argument that this Court's precedent foreclosed. Doing so was objectively unreasonable.

2. Lovell's objectively unreasonable representation prejudiced Brito. Based on Lovell's unreasonable advice, Brito rejected a favorable plea offer with a maximum sentence of fifteen years. After losing the doomed suppression motion, Brito pleaded guilty, and the district court sentenced him to twenty-one years. Brito would have accepted the initial

plea deal the Government offered but-for Lovell's unreasonable advice. Because Brito received a longer sentence than he would have received but-for Lovell's unreasonable advice, he satisfies the second element of *Strickland*.

3.     Finally, at minimum, Brito is entitled to an evidentiary hearing because the record does not conclusively demonstrate that he is entitled to no relief. The record is inconsistent about whether Lovell guaranteed Brito he *would* prevail on the motion to suppress or said he *could* prevail on the motion. Further, if the Government disputes that the plea offer Brito rejected based on Lovell's unreasonable advice was a final, approved plea offer, an evidentiary hearing is necessary to resolve that dispute.

For these reasons, and those that follow, the Court should reverse the judgment of the district court, grant Brito's petition, vacate his conviction, and remand with instructions for the Government to reoffer the initial plea agreement. In the alternative, the Court should vacate the district court's judgment and remand for an evidentiary hearing.

# V.   Argument

The Sixth Amendment gives criminal defendants the right to have "the Assistance of Counsel" for their defense. U.S. Const. amend. VI. But the mere presence of a lawyer "is not enough to satisfy the constitutional command." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). The Sixth Amendment "envisions [counsel] playing a role that is critical" in obtaining just results. *Id*. Therefore, "the right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970) (emphasis added).

*Strickland* sets forth two requirements for an ineffective-assistance-of-counsel claim. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. And "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id*.

In *Padilla v. Kentucky*, the Supreme Court held that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the

Sixth Amendment right to effective assistance of counsel." 559 U.S. 356, 373 (2010). And the two-prong *Strickland* test governs claims of ineffective assistance at the plea-bargaining phase. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). That is, *Strickland* provides the test when "a defendant pleads guilty to less favorable terms and claims that ineffective assistance of counsel caused him to miss out on a more favorable earlier plea offer." *Missouri v. Frye*, 566 U.S. 134, 148 (2012).

## A.  Lovell's representation fell below an objective standard of reasonableness.

Under *Strickland*, to prevail on a claim of ineffective assistance of counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. The district court correctly noted that Brito must show that "no competent lawyer would have taken" Lovell's position on the suppression issue. (ECF No. 284 at 8 (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)).) But the district court reached the wrong conclusion about Lovell's performance.

Lovell's position was that the tracker warrant was void because it violated Georgia state law under *Luangkhot v. State*, 736 S.E.2d 397, 400–01 (Ga. 2013). (*See* ECF No. 114 at 2–3.) He contended that the judge

who approved the warrant did not have jurisdiction because there is no evidence that Brito's SUV had ever been in Coweta County and was not in Coweta County at the time of the tracker's installation. (ECF No. 130 at 5; ECF No. 114 at 2.) The district court correctly refused to suppress the evidence based on binding authority in *Simms*. (ECF No. 141 at 37.)

On appeal, Lovell advanced substantially the same arguments he raised in the district court: the warrant was invalid because the state-court judge lacked jurisdiction; and the agents had acted in bad faith in their securing and execution of the warrant. *See* Br. of Appellant at 17, *United States v. Brito-Arroyo*, No. 20-10974, 2021 WL 211653; Reply Br. at 39, 47, *United States v. Brito-Arroyo*, No. 20-10974, 2021 WL 1248588. This Court held Brito's case was "just like [*Simms*]," in which the Court held that a violation of state law did not implicate the Fourth Amendment. *United States v. Brito-Arroyo*, No. 20-10974, 2021 WL 3661200, at *3–4 (11th Cir. Aug. 18, 2021). In other words, because violation of state law does not "implicate federal constitutional concerns," and because "constitutional considerations, rather than the demands of state law, direct" the resolution of motions to suppress, *id.* at 3 (quoting *Simms*, 385

F.3d at 1355–56), Lovell's motion to suppress was doomed to fail under binding precedent.

In its analysis of Brito's habeas petition, the district court concluded that Brito could not show that the position Lovell took in the motion to suppress was not "potentially meritorious"; that "no competent lawyer would have taken [it]"; or that the motion was "doomed to fail." (ECF No. 284 at 8.) Thus, the court reasoned that "it may have been reasonable for trial counsel, under the circumstances at the time, to conclude that there was a good chance the motion was going to succeed." (*Id.* (quoting *Mostowicz v. United States*, 625 F. App'x 489, 494 (11th Cir. 2015)).) And, despite conflicting statements from Brito about the topic, the court reasoned that Lovell had told Brito only that he "could" win the suppression motion. (*Id.* at 7–8.) He had not guaranteed he "would" win the motion. (*Id.*)[4]

---

[4] The district court also discussed the "open question" in this Circuit about whether the good faith exception applies when a warrant is void initio. (*Id.* at 8–9.) Given that, under binding precedent in *Simms*, there was no Fourth Amendment violation, an open question about the good-faith exception to the Fourth Amendment's exclusionary rule is irrelevant.

The district court's analysis misses the mark. Under *Simms*, a decision the district court itself relied on to deny the motion to suppress, Lovell's motion was not "potentially meritorious." It was "doomed to fail." And it does not matter whether Lovell told Brito that the motion would succeed or could succeed. Under *Simms*, it would not, and it could not.

No reasonable attorney would advise their client to turn down a favorable plea agreement based on a suppression motion that binding precedent has already precluded. "[A] failure of counsel to be aware of prior controlling precedents in even a single prejudicial instance might render counsel's assistance ineffective under the Sixth Amendment." *Nelson v. Estelle*, 642 F.2d 903, 908 (5th Cir. 1981); *accord Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972) ("[A]lthough counsel need not be a fortune teller, he must be a reasonably competent legal historian. Though he need not see into the future, he must reasonably recall (or at least research) the past ….").[5] In sum, Lovell's lack of awareness that

---

[5] Under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), these decisions are binding precedent in the Eleventh Circuit.

*Simms* foreclosed his suppression argument is enough to be ineffective assistance of counsel.

This is particularly true given that Lovell had to be aware the *Simms* decision existed because the Government relied on *Simms* in its arguments and Lovell address *Simms* in his reply. It was unreasonable for Lovell to read *Simms* and try to distinguish it on the consent issue without accounting for the effect *Simms* had as binding precedent foreclosing his argument about the violation of state law. (*See* ECF No. 138 at 8 (discussing only the voluntary consent to conduct a vehicle search in *Simms* when a proper reading and understanding of the case would have alerted Lovell to the preclusion of his argument).)

In short, Lovell advised Brito to reject a favorable plea agreement based on the possible success of a suppression motion that, under binding precedent, could never succeed. No reasonable lawyer would do that.

## B. Lovell's ineffective assistance prejudiced Brito.

Ensuring effective assistance of counsel at the plea-bargaining phase of criminal proceedings presents special challenges and is especially important. It is more difficult for prosecutors and the court to recognize when something is amiss in plea negotiations because "[w]hen a

plea offer has lapsed or been rejected, . . . no formal court proceedings are involved." *Frye*, 566 U.S. at 143. Additionally, criminal prosecutions typically end with pleas. In the twelve-month period ending on September 30, 2022, the Administrative Office of U.S. Courts recorded that only 1,669 of the 71,954 defendants that entered the justice system went to trial—only 2.3% of defendants.[6] In contrast, 64,384 defendants entered a plea—89.5% of total defendants and 97.9% of convictions in the federal courts. *Id*. The trend held the same in 2023. Only 2.5% of defendants went to trial, but 88% of defendants made plea deals and plea deals made up 97.6% of total convictions.[7] This is why the Supreme Court reasoned that "it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." *Frye*, 566 U.S. at 143–44.

---

[6] United States Courts, U.S. District Courts–Criminal Defendants Disposed of, by Type of Disposition and Offense, During the 12-Month Period Ending September 30, 2022 (Sept. 30, 2022), https://www.uscourts.gov/sites/default/files/data_tables/jb_d4_0930.2022.pdf.

[7] United States Courts, U.S. District Courts–Criminal Defendants Disposed of, by Type of Disposition and Offense, During the 12-Month Period Ending September 30, 2023 (Sept. 30, 2023), https://www.uscourts.gov/sites/default/files/data_tables/jb_d4_0930.2023.pdf.

So when analyzing the second element of the *Strickland* test, whether "the result of the proceeding would have been different," 466 U.S. at 694, the Court should "[look] not at whether the defendant would have proceeded to trial absent ineffective assistance but whether he would have accepted the offer to plead pursuant to the terms earlier proposed," *Frye,* 566 U.S. at 148.

The Supreme Court and this Court have elaborated on that analysis. For defendants to prevail on the second, or prejudice, element of *Strickland*, they must show a reasonable probability: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012); *Frye*, 566 U.S. at 148).

The district court held that Brito failed to satisfy the second element of *Strickland* for two reasons. First, the court concluded that Brito

had not shown that his sentence would have been less severe under the plea than what the court ultimately imposed. (ECF No. 284 at 9.) That is false on the face of the record. (ECF No. 238 at 11; ECF No. 204 at 3.) Fifteen years is less severe than twenty-one years.

Second, the district court reasoned that plea agreements are not binding, and the court believed the sentence it imposed to be "fair and reasonable." (ECF No. 284 at 9.) It stands to reason that every court imposing a sentence believes the sentence to be "fair and reasonable." Satisfying *Strickland's* second element is not based on the subjective appraisal of courts as to their own fairness and reasonableness in sentencing. Instead, under *Lafler*, *Frye*, and their progeny, the analysis is different.

Here, the facts relevant to the *Lafler* prejudice analysis show that Lovell's unreasonable representation prejudiced Brito. As to the first part of that analysis, according to Lovell, Brito never intended to go to trial. (ECF No. 238 at 12.) In fact, Lovell knew Brito wanted to, and would, accept a favorable plea, and it was only because of Lovell's unreasonable advice about the merits of the suppression motion that Brito rejected the original plea agreement the Government offered. (ECF No. 278 at 14.)

Had Lovell provided reasonable advice to Brito, Brito would have accepted the Government's originally offered plea agreement, with a recommended ten-to-fifteen-year sentence. That Brito ultimately signed a less favorable plea agreement with the Government despite the lack of new charges or significant new facts only buttresses that conclusion. (ECF No. 187 at 10.) Thus, the first element is satisfied.

As to the second element, in general, Courts accept plea agreements between defendants and the Government. In similar cases involving the manufacturing or possession of methamphetamine with intent to distribute, courts, including the Northern District of Georgia, have accepted plea agreements in the range of 120 to 154 months (ten to 14.5 years). *See, e.g.*, *Vazquez v. United States*, No. 1:11-CR-0264-AT-JFK-9, 2015 WL 3407624 (N.D. Ga. May 27, 2015) (accepting a plea agreement with a 120-month sentence in a case involving more serious charges[8]); *Rivera-Benito v. United States*, No. 4:10-cv-19, 2013 WL 10739075 (N.D. Ga. Sept. 11, 2013) (accepting a plea agreement with a 121-month sentence in a case

---

[8] Brito was indicted for illegal possession related to his immigration status, not possession in furtherance of a drug-trafficking crime. (ECF No. 27 at 4.)

involving possession with intent to distribute 500 or more grams of meth-amphetamine). Given the district court's acceptance of the plea agreement in the underlying cases, and its acceptance of other plea agreements like the one the Government first offered to Brito, there is no reason to believe the Court would have rejected the original plea agreement. So the second element is satisfied.

As to the third element, Brito was sentenced to twenty-one years in prison. (ECF No. 238 at 40.) This represents a 40% increase over the upper limit (fifteen years) of the recommended sentence under the initial plea agreement, a plainly more severe outcome for Brito. So the third element is satisfied.

Having satisfied all three elements under *Osley* and *Lafler*, Lovell's unreasonable recommendation prejudiced Brito for purposes of *Strickland*.

## C. At minimum, Brito was entitled to an evidentiary hearing.

Under 28 U.S.C. § 2255(b), petitioners must receive an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Although the district court is correct that, an evidentiary hearing is not required if the record,

"which [the] court must accept as true … conclusively demonstrates that no relief is warranted," (ECF No. 284 at 5 (citing *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991))), the record belies any conclusion that it "conclusively demonstrates" relief is unwarranted.

First, as to the reasonableness of Lovell's representation about the probability of success on the motion to suppress, the district court focuses on Brito's statement on the first page of the Memorandum of Law attached to his § 2255 petition that Lovell said he "could" win the motion to suppress. (ECF No. 284 at 7 (citing ECF No. 278-1 at 1).) But in the petition itself, Brito uses the word "would" instead of "could" when discussing Lovell's representation about the motion to suppress. (ECF No. 278 at 4.) If the would–could distinction is important here, as the district court suggests, that discrepancy itself warrants an evidentiary hearing to determine the precise nature of Lovell's advice. *See Martin v. United States*, 703 F. App'x 866, 871 (11th Cir. 2017) (focusing on "would" versus "could" in claim of ineffective assistance of counsel).[9]

---

[9] As previously stated, the "would" v. "could" distinction is likely one without a difference. Because binding precedent doomed the suppression motion, either representation is ineffective assistance.

Second, the court relies on Brito's "own words" at the change of plea hearing about his satisfaction with Lovell's representation to undermine his claim of ineffective assistance of counsel. (ECF No. 248 at 7, 8.) That analysis makes little sense. Brito is not an attorney, and he had no way to know that the binding precedent foreclosed any chance of winning the suppression motion until this Court's decision on the issue months after his sentencing.

Finally, the offered-and-rejected plea agreement was not admitted into evidence at the sentence hearing, and a copy is not part of the record. (ECF No. 238 at 10; ECF No. 203 (showing the exhibit regarding plea negotiations was not moved into evidence).) Although Lovell discussed it heavily and was under the impression that it did not need further approval by supervisors at the U.S. Attorney's Office, (ECF No. 238 at 34–35), the attorney representing the Government at the sentence hearing was uncertain whether the offer had been fully approved or was simply a proposal. (ECF No. 238 at 26–27.) Thus, to the extent there is any lack of certainty or dispute about the nature of the initial plea offer, an evidentiary hearing is needed.

In sum, at minimum the record does not conclusively demonstrate that Brito is entitled to no relief on his petition. For that reason, at minimum, the district court should have ordered an evidentiary hearing before denying the petition.

# VI.  CONCLUSION

The Court should hold that Brito received ineffective assistance of counsel. It should reverse the district court's judgment, grant the petition, vacate Brito's conviction, and remand with instructions for the Government to reoffer the initial plea agreement in line with *Lafler*. In the alternative, the Court should vacate the district court's judgment and remand for an evidentiary hearing.

Respectfully submitted,

s/ E. Travis Ramey
E. Travis Ramey

Attorney for Appellant
Zury Brito-Arroyo

**OF COUNSEL:**
Appellate Advocacy Clinic
University of Alabama School of Law
Box 870382
101 Paul W. Bryant Drive, East
Tuscaloosa, Alabama 35487
(205) 348-4960
tramey@law.ua.edu

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief is in 14-point Century Schoolbook, which is a proportionately spaced font that includes serifs.

This brief complies with the type-volume limitations in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 4,835 words, excluding the parts of the brief that are exempt under Federal Rule of Appellate Procedure 32(f).

s/ E. Travis Ramey
OF COUNSEL

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2024, I filed a copy of this document

with the Clerk of the Court using the CM/ECF system, which will serve

it on all counsel of record.

s/ E. Travis Ramey
OF COUNSEL